UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**GILA RIVER INDIAN COMMUNITY**, a federally-recognized Indian tribe,
525 West Gu u Ki
Sacaton, Arizona 85247

and

**GILA RIVER HEALTH CARE CORPORATION,** a wholly-owned and subordinate tribal entity of the Gila River Indian Community,
483 West Seed Farm Road
Sacaton, AZ 85147

**Plaintiffs,**

v.

**ALEX M. AZAR**, in his official capacity as Secretary, U.S. Department of Health & Human Services,
U.S. Department of Health & Human Services
200 Independence Ave, S.W.
Washington, DC 20201

**REAR ADM. MICHAEL D. WEAHKEE**, in his official capacity as Director, Indian Health Service,
Indian Health Service
5600 Fishers Lane
Rockville, MD 20857

**and,**

**UNITED STATES OF AMERICA,**
c/o Attorney General of the United States
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530-0001

**Defendants.**

CASE NUMBER  20-3398

## **COMPLAINT**

Plaintiffs Gila River Indian Community and Gila River Health Care Corporation (collectively "the Community"), for their cause of action against the Defendants named above, alleges as follows:

1.       This is a suit against the United States for violation of the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5301 *et seq.* and breach of the Community's ISDEAA Compact and Funding Agreement by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services ("HHS").  The Community seeks money damages under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*, based on Defendants' violation of the Community's contractual and statutory right to the payment of full contract support costs ("CSC") for carrying out its ISDEAA health programs. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[T]he Government must pay each tribe's contract support costs in full.").  Defendants breached the Community's Compact and Funding Agreement and violated the ISDEAA by failing to pay the full amount of CSC owed to the Community under ISDEAA and the Community's Compact and Funding Agreement for Fiscal Year 2013.

## JURISDICTION AND VENUE

2.       This action arises under agreements between the United States and the Community for operation of Indian health programs carried out pursuant to the ISDEAA.  This Court has subject matter jurisdiction under the ISDEAA, which provides for original jurisdiction in United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts.  25 U.S.C. § 5331(a).

3.       In a letter dated and sent September 27, 2019 ("the 2019 CDA Letter"), the Community requested an IHS Contracting Officer's decision on claims for underpaid CSC for fiscal year 2013. The Community's claim was greater than $100,000; thus the IHS Contracting Officer was required to either issue a decision within 60 days of receiving the Community's claim, or notify the Community of the time within which a decision would be issued.  41 U.S.C.

§ 7103(f)(2).  The 60-day deadline expired on November 26, 2019, with no response by the IHS Contracting Officer.  The IHS Contracting Officer has not issued a final decision or otherwise responded to the 2019 CDA Letter as of the date of this Complaint.  The IHS Contracting Officer's failure to issue a decision, or notify the Community of a reasonable time within which a decision would be issued, is "deemed to be a decision by the Contracting Officer denying the claim and authorizes an appeal or action on the claim."  41 U.S.C. § 7103(f)(5).

4. This Court has jurisdiction to review the IHS's decisions with respect to the Community's 2013 CSC claims under the Contract Disputes Act and the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. § 5331(a); 25 U.S.C. § 5331(d).

5. Venue is proper because Defendant Alex M. Azar, in his official capacity as Secretary of HHS, is located in the District of Columbia.

## PARTIES

6. Plaintiff Gila River Indian Community ("the Community") is a federally-recognized Indian tribe with its headquarters in Sacaton, Arizona.  The Community occupies the Gila River Indian Reservation on lands located in Pinal and Maricopa Counties in Arizona.  The Community is home to members of both the Akimel O'odham (Pima) and the Pee-Posh (Maricopa) tribes.

7. The Community is an "Indian tribe" eligible to contract and compact with IHS under the ISDEAA.  *See* 25 U.S.C. § 5304(e).  The Community is party to a Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. § 5381 *et seq*. to provide health care services to eligible Indians and other eligible beneficiaries in fiscal year 2013.

8. Plaintiff Gila River Health Care Corporation ("GRHC") is a wholly-owned and subordinate tribal entity of the Community, and has been designated as a tribal organization for

providing health care services pursuant to ISDEAA and the Community's Compact and Funding Agreement, and provided such services during fiscal year 2013. The Community provides a portion of the compacted health care services directly, *i.e.*, not through GRHC. References herein to the "Community" include GRHC unless otherwise indicated.

9. Defendant Alex M. Azar, the Secretary of HHS ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

10. Defendant Rear Admiral Michael D. Weahkee is the Director of the IHS ("the Director"), the agency responsible for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). He is sued in his official capacity.

11. Defendant the United States of America is a party to the Community's ISDEAA agreements, which include the Compact of Self-Governance Between the Gila River Indian Community and the United States of America ("Compact"), and the Funding Agreement Between the Gila River Indian Community and the United States of America for Fiscal Year 2013 ("Funding Agreement").

## GENERAL ALLEGATIONS

### ISDEAA Agreements and Funding

12. The ISDEAA authorizes the Community to contract with the United States to assume responsibility for providing government programs, functions, services and activities ("PFSAs") that the United States would otherwise be obligated, by its trust responsibility, treaty, and statute, to provide to the Community, its members, and other eligible Indians. This

4

arrangement allows Indian tribes to operate the PFSAs in a manner that best serves the needs of their community and advances the interests of tribal self-governance and self-determination.

13. The United States provides several categories of funding for the PFSAs, including: (1) "program" funds, that is, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1); and (2) "contract support costs," that is, the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. §§ 5325(a)(2) & (3); 25 U.S.C. § 5396(a) (incorporating §§ 5325(a)-(k) into Title V).

14. The ISDEAA requires that, upon approval of the contract, "the Secretary shall add to the contract the full amount of funds to which the contractor is entitled [under § 5325(a)]," including CSC. 25 U.S.C. § 5325(g). The Compact and Funding Agreement also require IHS to pay the full amount of CSC owed to the Community. Compact Art. II, Sec. 3; Funding Agreement, Sec. 4.IV.

15. The ISDEAA, the Compact, and the Funding Agreement must be "be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 5392(f). The Supreme Court has confirmed that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 194 (addressing an ISDEAA Title I contract).

16. During fiscal year 2013, the Community provided health care services to eligible Indians and other eligible beneficiaries pursuant to its Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. § 5381 *et seq*.

17. In this action, the Community alleges that Defendants underpaid direct and indirect CSC for fiscal year 2013.

### Direct CSC

18. Direct CSC comprises the expenses directly attributable to a certain PFSA but not captured in either the indirect CSC or the program funds amount, such as insurance or other expenses that IHS would not have incurred (for example, the government is self-insured, so it does not incur these costs).

19. IHS is required to fully reimburse the Tribe's direct CSC. 25 U.S.C. § 5325(a)(3)(A)(i). Direct contract support costs are for services that support one particular program and therefore are not properly allocated across other programs.

20. The Community incurred direct CSC in fiscal year 2013 of $4,204,020, but IHS paid only $1,452,993, resulting in a shortfall of $2,751,027.

### Indirect CSC

21. Indirect CSC comprises costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs. Indirect CSC "shall include the costs of reimbursing each tribal contractor for reasonable allowable costs of . . . any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract." 25 U.S.C. § 5325(a)(3)(A)(ii). The only statutory limitation on IHS's reimbursement obligation is that CSC funding shall not be duplicative of program funding provided under § 5325(a)(1).

22. The full amount of indirect CSC owed to the Community for fiscal year 2013 is determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base

(that is, the funds spent under the federal contract).

23.     Upon information and belief, Defendants do not dispute that the indirect CSC owed to the Community is to be calculated by applying the Community's indirect cost rate to its direct cost base.

24.     In determining the amount of CSC owed to the Community, IHS did not use the correct amount for the direct cost base. IHS only included funding provided directly by IHS from appropriated funds for PFSAs transferred under the ISDEAA agreement. But this is not the full amount of funding needed, or actually used, by the Community or IHS to carry out the compacted PFSAs and provide services to Indian beneficiaries.

25.     When IHS provides health services directly to eligible beneficiaries (as opposed to entering into an ISDEAA agreement with a tribe or tribal organization to provide such services), IHS relies on third-party revenues billed to and collected from Medicare, Medicaid, private insurers, and others, to fund the services. 42 U.S.C. §§ 1395–1395lll, 1396–1396w-5, 1397aa–1397mm. Thus, the cost of "operation of the Federal Program"—and thus a tribe's right to CSC—includes the elements of the program that are funded by third party revenue.

26.     The amounts appropriated for IHS and tribal ISDEAA health programs directly are not sufficient to carry out the programs. In fact, Article IV, Section 16 of the Compact is titled "Inadequacy of Program Funding" and states that "[t]he parties to this Compact understand that the IHS budget is inadequate to fully meet the special responsibilities and legal obligations of the United States to assure the highest possible health status for American Indians and Alaska Natives and that, accordingly, the funds provided to the Community are inadequate to permit the Community to achieve this goal." IHS also admitted that, for Fiscal Year 2012, third-party revenue "collections are a significant part of the IHS and Tribal budgets, and provide increased

access to quality health care services for American Indian and Alaska Natives." Dep't of Health & Human Servs., *Indian Health Service FY 2013 Justification of Estimates for Appropriations Committees*, at CJ-141. In fact, IHS admits that such collections are "essential to maintaining facility accreditation and standards of health care." *Id*.

27. The ISDEAA provides for the Community to collect third-party revenues and use them to provide the compacted services. Under 25 U.S.C. § 5388(j), "[a]ll Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement." The Compact has corresponding language. Art. II, Section 6.

28. IHS has acknowledged that the "total health care program" costs—that is, funding from "all resources, including but not limited to IHS, other Federal and State agencies, Tribal contributions, and collections from Medicare, Medicaid, and private insurance"—may be included in the direct cost base for the purpose of calculating a tribe's indirect CSC need. IHS Indian Health Manual §§ 6-3.2(E)(1)(a)(i), (E)(1)(b); 6-3.1(G)(34).

29. The Community's 2013 indirect cost rate agreement with the Department of the Interior's Business Center, which applies to the Community's ISDEAA programs, requires application of a 29.99% indirect cost rate to the direct cost base for GRHC programs, and application of 22.76% indirect cost rate to Community programs. This is equivalent to a 29.78% indirect cost rate for the combined programs.

30. Inclusion of the Community's expenditures funded by program income results in a direct cost base of $114,202,449 for the combined programs. Applying the combined indirect cost rate to that cost base amount results in an indirect CSC need of $34,004,836. IHS only paid $8,068,313—an underpayment of $25,936,524.

31. The Community's 2019 CDA Letter requests an indirect CSC payment that accounts for expenditures of the program, and the Community is entitled to that full amount. But even if the Community and GRHC's expenditures funded by program income are not included in the direct cost base, there is an indirect CSC underpayment. Calculating the Community's indirect CSC need on this basis results in a shortfall of approximately $5,325,834.

32. Shortfalls in direct and indirect funding also reduce the Community's ability to generate current year and long term third party revenue. Current year third party revenue is generated, by way of example, through the use of funding to increase current year provider services for unmet needs. Long term third party revenue is generated, by way of example, through investment to enable program expansion, equipment purchases, long-term staffing changes, and capital improvements that are all necessary to increase provider services in future years.

33. In fiscal year 2013, the Community generated third party revenue at a rate of 145.92% of the amount of IHS and Community funds expended to generate the revenue. The Community contends that if it had been paid in full, it would have generated current year and long term third party revenue in the same proportion, an additional $41,355,341. As a direct result of Defendants' breach of contract and statute, GRHC has lost current year third party revenues and has been denied funds needed for long term third party revenue that will damage the Community in both the current and future years. These damages were foreseeable by Defendants.

## CAUSES OF ACTION

## COUNT I – BREACH OF ISDEAA

34. All prior allegations are adopted by reference as if fully set forth herein.

35.     The ISDEAA requires IHS to pay the Community's CSC in full.  25 U.S.C. § 5325(a) & (g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185.

36.     IHS failed to pay the full amount of indirect CSC owed to the Community for fiscal year 2013, and in doing so, IHS violated the ISDEAA.

37.     As a result of IHS's violation of the ISDEAA, the Community sustained damages totaling  $70,042,892 for fiscal year 2013, and Defendants are liable to the Community for this amount under Section 110(a), 25 U.S.C. § 5331(a).

## COUNT II – BREACH OF CONTRACT

38.     All prior allegations are adopted by reference as if fully set forth herein.

39.     The Compact and Funding Agreement incorporate the statutory duty to fully fund the Community's CSC.  Compact Art. II, Sec. 3; Funding Agreement, Sec. 4.IV.

40.     By failing to pay the full amount of CSC owed to the Community, the IHS breached its contractual agreements with the Community.

41.     As a result of IHS's breach of its contractual agreements, the Community sustained damages totaling $70,042,892 for fiscal year 2013.  Defendants are liable to the Community for this amount.

42.     The Community therefore seeks an award of damages under the ISDEAA, 25 U.S.C. § 5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*.

## PRAYER FOR RELIEF

43.     Plaintiffs Gila River Indian Community and Gila River Health Care Corporation respectfully request the Court grant relief as follows:

(a)     Award Plaintiffs damages of $70,042,892 for fiscal year 2013 for unpaid CSC;

(b) Award such other damages as may be proven in this action;

(c) Order the payment of interest on these claims pursuant to the Contract Disputes Act, 41 U.S.C. § 7109, and the Prompt Payment Act, 31 U.S.C. § 3901;

(d) Award Plaintiffs their attorney fees and expenses; and

(e) Grant Plaintiffs such other and further relief as the Court deems appropriate.

Dated:  November __, 2020          Respectfully submitted,


/s/ James K. Nichols
Vernle Charles Durocher Jr.
#MI0006)durocher.skip@dorsey.com
James K. Nichols MN0001
nichols.james@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Fax:  (612) 340-2868

Robert R. Yoder AZ0021
Yoder & Langford, P.C.
4835 East Cactus Road, Suite 260
Scottsdale, Arizona 85254
Telephone:  (602) 808-9578

Attorneys for Plaintiffs Gila River Indian Community and Gila River Health Care Corporation